Evan S. Strassberg (Bar No. 219336)
E-Mail: esstrassberg@michaelbest.com
MICHAEL BEST & FRIEDRICH, LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, Utah 84121
Telephone: (801) 833-0477
Facsimile: (801) 931-2500

**Attorneys for Defendant John L. Parmigiani**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COOPER TRUST DTD 10/05/2000 by its Trustee LETITIA MCKEE COOPER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN L. PARMIGIANI, an individual; DOES 1 through 20, Inclusive;<br><br>Defendants. | Case No.: CV 17-04379-PA (AGRx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: STATUTE OF LIMITATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Percy Anderson<br>Date: July 22, 2019<br>Time: 1:30 p.m.<br>Ctrm: Courtroom 9A, 9th Floor |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Response to Plaintiff's Objections to Evidence

Plaintiff broadly objects to Defendant's reliance on documents from the FINRA arbitration files for the two arbitration proceedings that Plaintiff filed against Defendant and others. To be clear, Plaintiff in no way challenges the authenticity of those documents; nor does she substantively challenge the facts set forth in Defendant's Separate Statement that are derived from those documents. Plaintiff instead argues that the documents are "confidential and private arbitration

document[s]" that are inadmissible in this action. As a threshold matter, the official position of FINRA is that "FINRA staff and the arbitrators on our roster are ethically obligated to keep information obtained in the arbitration confidential. **However, parties or their counsel are generally free to disclose details of their own proceedings as they see fit.**" FINRA Administrative FAQ (attached as Exhibit "A" hereto) (emphasis added).[1] Moreover, the arbitration documents that Defendant has relied on do not reveal any confidential information about Plaintiff—they merely reveal what actually happened in the arbitration proceedings.

Furthermore, if Plaintiff is correct that evidence of what occurred in arbitration proceedings is de facto inadmissible in court proceedings, it would be impossible for a court ever to address the argument at issue here—namely, whether a party can invoke equitable tolling under California law. Where it is Plaintiff's burden to demonstrate good faith, a blanket prohibition on the admission of arbitration records would make that impossible, and would also make it impossible for Defendant to respond to Plaintiff's claim that she is entitled to equitable tolling in this case. It is telling that Plaintiff cites no case suggesting—let alone holding—that arbitration records are

---

[1] Although Plaintiff quotes a FINRA rule providing that "the documents and information in FINRA Dispute Resolution case files are confidential," she cites no source for that statement. *See, e.g.,* Separate Statement of Disputed Facts [Docket No. 56] at 3:8-14. However, it appears the quote was taken from FINRA's website, a copy of which is attached as Exhibit "B" hereto. The quote Plaintiff provides comes from a section entitled "Protecting Personal Confidential Information" that describes how FINRA itself treats personal information and who may access such information when it is lodged in FINRA's files. That statement, however, imposes no obligations on the parties regarding arbitration-related documents, and, as discussed herein, FINRA in another publication has made clear that "parties or their counsel are generally free to disclose details of their own proceedings as they see fit." Moreover, the arbitration documents that Defendant has attached as evidence do not disclose any personal information regarding the Plaintiff such as her social security number, financial account numbers, taxpayer identification numbers, or medical records. *See* Exhibit "B" (providing examples of "confidential information").

inadmissible in any case, let alone a case where the records are plainly relevant to a key legal defense.

Plaintiff also cites Federal Rule of Evidence 501 in her evidentiary objections, but that rule merely sets out the general rules regarding the application of various privileges and provides that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision," but that federal statutes and the United States Constitution apply when appropriate. Here, however, Plaintiff does not cite to any federal statute, state law or common law that governs the admissibility of arbitration records. Absent a specific rule or statute that bars the use of documents from an arbitration proceeding, such records are admissible provided they are relevant. Fed. R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court.").

The arbitration orders and other filings are plainly relevant to the issue presented: whether Plaintiff can carry her burden of proof regarding her contention that the statutes of limitation should be equitably tolled. Plaintiff has placed the arbitration proceedings squarely at issue by arguing that her pursuit of arbitration justifies application of the equitably tolling doctrine (*see* Second Amended Complaint [Docket No. 47] ¶¶ 34-36), and she cannot bar Defendant from referring to those same arbitration proceedings, or providing the Court with evidence of what happened in those proceedings, in his effort to rebut that contention. Thus, the evidence submitted with Defendant's motion is admissible.

## II. Argument

Plaintiff concludes her opposition memorandum pleading that she "has tried more than ordinary person should have to try, to simply have a hearing on the merits." Opp. Memo at 11. But Plaintiff's opposition never addresses the issue that is at the heart of Defendant's motion—that she had every opportunity to have her claims heard

on the merits but chose, for reasons she still has not explained, not to do so. To be clear, Plaintiff has mustered no substantive dispute against—and has offered no evidence of her own to contest[2]—the statements of fact in paragraphs 19 through 22 of Defendant's Statement of Undisputed Facts, which state:

> 19. On April 21, 2015, the Panel in the First Arbitration issued an order stating, in relevant part: . . . The Panel will dismiss Claimant's case unless Claimant and Respondents have agreed to an arbitration date by May 8, 2015 . . . .
>
> 20. After the April 21, 2015 order was issued, neither Plaintiff nor her counsel contacted Defendant's counsel to discuss new arbitration hearing dates.
>
> 21. Defendant and his counsel were fully prepared to set a hearing date as directed by the Panel had Plaintiff or her counsel made any effort to discuss hearing dates.
>
> 22. Because no arbitration date was set, on June 9, 2015, the Panel in the First Arbitration ordered that, consistent with its April 21, 2015 order, the First Arbitration was dismissed.

---

[2] Plaintiff contends in her opposition that "the letter to set a new date was not received by her counsel," but she offers no evidence to support this statement. Opp. Memo at 10. It is axiomatic that, on summary judgment, bald contentions of fact, unsupported by any evidence, are inadequate. *See* Fed. R. Civ. P. 56(c)(1). Defendant established in his moving papers that the parties to the First Arbitration were told by the Panel that they needed to set a hearing date to avoid dismissal. *See* Defendant's Separate Statement of Undisputed Facts [Docket No. 49] ¶ 19, and Declaration of Jeffrey Kob (Exhibit "B" thereto) at ¶ 8. Plaintiff provided no evidence to rebut this proposition. Moreover, there has never been any suggestion in the arbitration proceedings—and certainly no evidence to demonstrate—that Plaintiff's counsel did not receive the June 2015 order, and Plaintiff plainly was aware of the dismissal of the First Arbitration given that she later filed the Second Arbitration. Additionally, the record in the arbitration proceedings makes clear that Plaintiff and her counsel (both before and after Mr. Fogel entered his appearance) were receiving and responding to arbitration filings. *See* Defendant's Undisputed Facts ¶ 16.

Thus, it is undisputed that, after five years of arbitration, and having received every opportunity to have her case heard on the merits, Plaintiff did nothing to actually schedule the merits hearing. She also does not dispute that she then waited another six months before re-filing the claim in arbitration, by which time the claim had become untimely as a matter of law under FINRA regulations. She makes no effort to explain this lapse in time, or why she dragged Defendant through another arbitration proceeding even though it was unquestionably time barred.

Plaintiff also does not even address—let alone attempt to distinguish—the very recent and highly analogous California appellate authority cited by Defendant in his motion. In *Long v. Forty Niners Football Co., LLC*, 33 Cal. App. 5th 550 (1st App. Dist., Div. 4, March 26, 2019), the plaintiff chose first to pursue his claim in state court, but dismissed that action right before trial, electing instead to pursue a federal claim. *See id.* Then, after the federal court case was dismissed without prejudice, the plaintiff sued again in state court. In language that is worth quoting the *Long* court explained:

> [A]lthough defendant was on notice of [plaintiff's] claims from the beginning of the first state court action, the doctrine of equitable tolling was not intended to burden a defendant or the courts with having to repeatedly restart litigation of a case that was almost fully adjudicated, simply because the plaintiff had a last-minute change of heart about the forum. [Plaintiff] was free to take a chance and refile his claims in federal court, but to apply equitable tolling, in these circumstances, to [Plaintiff's] third lawsuit would undermine the doctrine's purposes of preventing parties from having to seek redress in separate forums and reducing the costs associated with duplicative filings.

*Id.* at 557.

Despite the centrality of *Long* to Defendant's motion, and its obvious parallels to this case, Plaintiff does not address it at all. She simply ignores it. Plaintiff here is virtually indistinguishable from the plaintiff in *Long* whose attempt to invoke the

equitable tolling doctrine was rejected as a matter of law on a motion to dismiss.[3] Plaintiff is burdening Defendant and this Court with having to restart litigation that would have been fully adjudicated four years ago had she simply set a hearing date. Plaintiff here, like the plaintiff in *Long*, "was free to take a chance and refile [her] claims in" court, but applying equitable tolling here "would undermine the doctrine's purposes" by encouraging a plaintiff to try her luck in one forum and then, for any reason or no reason, simply walk away and try again somewhere else.

Plaintiff also argues that the fact that the two arbitration proceedings were dismissed without prejudice precludes this Court from granting Defendant's motion, but that is not the case. The question that is squarely before this Court is one the arbitration panels never considered—specifically, whether Plaintiff is entitled to invoke equitable tolling of the statutes of limitation on her claims, which requires her to demonstrate good faith.[4] Thus, Defendant in no way seeks to "re-argue and re-litigate the prior arbitrations" as Plaintiff contends. Opp. Memo at 10. The motion at issue does not seek "appellate like review of the inner moving parts of who said what

---

[3] Moreover, Plaintiff here, like the plaintiff in *Long*, "has not identified any case that applies the doctrine of equitable tolling to a factual scenario even remotely similar to [hers]." Long, 33 Cal.App.5th at 556. For example, in *Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993), which Plaintiff cites, the plaintiff sued numerous parties after he was allegedly wrongfully discharged from public employment. Before suing the plaintiff had pursued administrative remedies in an effort to regain his employment and thereby mitigate his injury. *Id.* at 1274. Only after those administrative remedies and appeals were exhausted did plaintiff sue, and the Ninth Circuit concluded he was entitled to equitable tolling for the time he pursued those remedies. The plaintiff in *Cervantes* did not abandon a proceeding he had initiated and maintained for five years right before the merits of his claims were to be heard.

[4] Plaintiff incorrectly states that "Defendant concedes the first two prongs of the test" for equitable tolling, which Defendant has not done. Opp. Memo at 2. For purposes of the instant motion Defendant has challenged only the "good faith" prong, but has never conceded that Plaintiff can establish any of the three required elements.

in an arbitration five years ago," but instead seeks the application of unquestionably relevant law (the equitable tolling doctrine) to a set of discrete and undisputed facts.

Moreover, because the plaintiff in *Long* obviously dismissed his state court case without prejudice, that case also undermines Plaintiff's argument here that the fact that the First Arbitration was dismissed without prejudice is dispositive of the equitable tolling inquiry. Plainly it is not. If it were, the issue would never be litigated because if an earlier proceeding is dismissed *with prejudice* then there is no claim left to bring, and, by Plaintiff's logic, every claim dismissed without prejudice must be allowed under the equitable tolling doctrine. If this argument were correct then the court in *Long* could not have reached the result it did. Plaintiff dragged Defendant through the First Arbitration for five years only to abandon it, in what can only be described as a last minute change of heart. To the extent there was any explanation other than this, the time for Plaintiff to provide evidence supporting such an explanation was in her opposition to the motion.

Plaintiff also makes no effort to explain how she can invoke the equitable tolling doctrine when there was no "defect" that justified the dismissal of the First Arbitration. In *McDonald* the California Supreme Court explained that the doctrine of equitable tolling may generally apply in three circumstances: "where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, **is found to be defective for some reason**." *McDonald*, 45 Cal. 4th 88, 100 (citing *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 923) (emphasis added). Where it is now undisputed that the First Arbitration was not "defective," but was dismissed only because Plaintiff chose not to advance the case through to a hearing, equitable tolling is inapplicable.

## V. Conclusion

In seeking to invoke the doctrine of equitable tolling Plaintiff appeals to this Court's discretionary power to do what is fair, and she bears the burden of proving that she acted in good faith. Yet the undisputed facts demonstrate that she forced Defendant to endure a five-year arbitration proceeding that she simply abandoned on the eve of having her claims heard on their merits. California's appellate court has recently made it clear that equitable tolling is not a right to be claimed but a privilege that has to be earned, and a plaintiff who abandons one proceeding in lieu of another is not entitled to an equitable extension of the statute of limitations. Accordingly, Defendant John L. Parmigiani respectfully requests the entry of an order granting him summary judgment on all of Plaintiff's claims.

Respectfully submitted,

MICHAEL BEST & FRIEDRICH, LLP

Dated: July 8, 2019

By:/s/Evan S. Strassberg
Evan S. Strassberg
MICHAEL BEST & FRIEDRICH, LLP
Attorneys for Defendant
JOHN L. PARMIGIANI